IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| ROBERT G. WING, as Receiver for VESCOR CAPITAL CORP., a Nevada corporation, VESCOR CAPITAL, INC., a Nevada Corporation, VESCORP CAPITAL, LLC, a Nevada limited liability company, VESCORP CAPITAL IV-A, LLC, a Nevada limited liability company, and VESCORP CAPITAL IV-M, LLC, a Nevada limited liability company, and their related entities, | |
| Plaintiffs, | MEMORANDUM DECISION AND ORDER |
| vs. | |
| BRAD B. KENDRICK, an individual, AMY C. KENDRICK, an individual, and ABDF, LLC, a Nevada limited liability company, | Case No. 2:08-CV-01002-DB |
| Defendants. | Judge Dee Benson |

Before the Court is a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) brought by

Defendants Brad B. Kendrick, Amy C. Kendrick, and ABDF, LLC (collectively, "Kendrick").

The Court held a hearing covering this motion on Monday, April 20, 2009, at which the

defendants were represented by Mark R. Gaylord and Melanie Vartabedian. The Receiver,

Robert G. Wing, was present and represented by M. David Eckersley. After review and

consideration of the briefs submitted by the parties, the Court enters the following Memorandum

Decision and Order.

## I. Factual Background

This action is one of many arising out of the collapse of an alleged Ponzi scheme

orchestrated and run by Val Edmund Southwick through a complex web of over 150

corporations and limited liability companies. On February 6, 2008, the United States Securities

and Exchange Commission ("SEC") filed suit against Southwick and VesCor, alleging violations

of the Securities Act of 1933 and the Securities Exchange Act of 1934. On March 31, 2008, in a

separate state action, Southwick pleaded guilty to nine counts of securities fraud, each a felony

in the second degree, in the Third District Court of Utah, and was later sentenced to serve nine

consecutive 1-15 year prison terms, the maximum allowed by State law. On May, 5, 2008, the

Court appointed Robert G. Wing as Receiver for VesCor Capital Corp., VesCor Capital, Inc.,

VesCorp Capital, LLC, VesCorp Capital IV-A, LLC, VesCorp Capital IV-M, LLC, and all

affiliated limited partnerships, corporations or other business entities (collectively, "VesCor").

The Receiver filed this lawsuit on December 31, 2008, seeking the return, as fraudulent

transfers, of various payments made to Kendrick, who was an employee of, consultant for, and

investor in, VesCor. Complaint, Dkt. 2, ¶ 17. The Complaint alleges that during his term of

employment with VesCor, Kendrick received commission payments, execution bonuses, as well

as other bonus payments and consulting fees. *Id.* ¶ 18-20. In addition, it alleges that VesCor also

paid Kendrick's residential mortgage and vehicle lease payments, and agreed to "tax shelter"

Kendrick's base income throughout his employment. *Id.* ¶ 21-22. Kendrick also invested

approximately $97,000 with VesCor in 2001. *Id.* ¶ 23. Kendrick resigned from VesCor in August, 2003, and the parties were soon embroiled in litigation over what went wrong. Memorandum in Support of Motion to Dismiss, Dkt. 6, ¶ 9-12. Shortly thereafter, in July, 2004, the parties entered into a settlement agreement. Complaint, ¶ 24. Kendrick was paid approximately $135,341.92 and the agreement also called for payment of an additional $300,000 to settle the claims by Kendrick against Southwick. *Id.* ¶ 26.

## II. Discussion

Kendrick has moved this court to dismiss the Receiver's claims pursuant to Rule 12(b)(6). Kendrick advances three main arguments: (1) the Complaint fails to adequately plead the Receiver's fraudulent transfer claims; (2) the settlement agreement between Kendrick and VesCor bars the Receiver's claim; (3) the Utah Fraudulent Transfer Act's ("UFTA") statute of limitations bars the Receiver's claim.

The Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." In *Bell Atlantic Corp. v. Twombly*, the United States Supreme Court held that to meet this threshold requirement, a plaintiff's pleading must "nudge[] their claims across the line from conceivable to plausible." 550 U.S. 544, 570 (2007). This requirement serves both "to weed out claims that do not (in the absence of additional allegations) have a reasonable prospect of success [and] to inform the defendants of the actual grounds of the claim against them." *Robbins v. Oklahoma*, 519 F.3d 1242, 1248 (10th Cir. 2008).

"The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that

the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Tal v. Hogan*, 453 F.3d 1244, 1252 (10th Cir. 2006) (quoting *Sutton v. Utah State Scho. For the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999)). "In doing so, all facts alleged in the complaint are taken as true and all reasonable inferences are indulged in favor of the plaintiffs." *Id.* (quoting *GF Gaming Corp. v. City of Black Hawk, Colo.*, 405 F.3d 876, 881 (10th Cir. 2005)). This presumption applies to well-pleaded facts in the complaint, but not conclusory allegations. *Id.* (quoting *Mitchell v. King*, 537 F.2d 385, 386 (10th Cir. 1976)).

First, the Complaint sufficiently alleges the existence of a Ponzi scheme. The Complaint provides enough history regarding the manner in which Southwick borrowed, comingled, and transferred investor funds. Southwick's conviction of nine counts of securities fraud for transactions occurring during the period he allegedly was operating VesCor as a Ponzi scheme further underscores the plausibility of the Receiver's claim. In addition, the fact that the Court in 2008 opted for the "extraordinary remedy" of appointing a Receiver, while not alone dispositive, also supports the plausibility of the allegation that Southwick's scheme was a Ponzi scheme. *See, e.g.*, *Citibank, N.A. v. Nyland, Ltd.*, 839 F.2d 93, 97 (2d Cir. 1988) (stating that a receivership is an extraordinary remedy that should be "employed only where no lesser relief will be effective"); *Ferguson v. Tabah*, 288 F.2d 665, 673 (2d Cir. 1961) (describing a receivership as a "drastic remedy usually imposed only where no lesser relief will be effective").

Second, because the Complaint sufficiently pleaded the existence of a Ponzi scheme, the inference of fraudulent intent applies to transfers made by Southwick during the course of

carrying out his scheme, even transfers made pursuant to a settlement agreement containing a clause in which the parties thereto have released each other from future liability associated with a particular set of transactions. Kendrick is correct in noting that Utah courts generally uphold settlement agreements and releases. *See, e.g.*, *Otsuka Electronics (USA, Inc.) v. Imaging Specialists, Inc.*, 937 P.2d 1274 (Utah Ct. App. 1997). However, Kendrick is not correct in his belief that the Receiver possesses only the rights and remedies that would have been available to the VesCor entities while they were under Southwick's control. In *Scholes v. Lehmann*, the Seventh Circuit set out in considerable detail the unique position an equity receiver occupies in a Ponzi scheme case. 56 F.3d 750, 754 (7th Cir. 1995). It necessarily follows that a Receiver is not always subject to the claims and defenses that could have been raised against the entity before the Receiver was appointed. *See, e.g.*, *Bermant v. Broadbent*, No. 2:05-CV-466, 2006 WL 3692661, at *6 (D. Utah. Dec. 12, 2006) ("Courts routinely hold that federal equity receivers, appointed in conjunction with SEC enforcement actions, are not necessarily subject to all claims that could have been raised against an entitiy before the establishment of a receivership."); *S.E.C. v. Cook*, No. 3:00-CV-272-R, 2001 WL 256172, at *2 (N.D. Tex. Mar. 8, 2001) ("[W]hile the general rule is that the receiver may only bring actions that could have been brought by the entity in receivership, 'there are certain situations where the receiver is permitted to assert rights and defenses not available to the insolvent.'" (quoting *Butcher v. Howard*, 715 S.W.2d 601, 604 (Tenn. App. 1986))). Accordingly, the Receiver is not barred from asserting his claims against Kendrick merely because Kendrick included a broadly worded release provision as part of the settlement agreement he reached with Southwick, the operator of the fraudulent scheme.

Kendrick is free to establish, at a later point in the proceedings, that this settlement agreement was legitimate in that he that he took the settlement payment (as well as the other payments at issue in this suit) from VesCor in good faith and for a reasonably equivalent value.

Finally, the Receiver is not barred by the statute of limitations applicable in this case. Under the UFTA, a fraudulent transfer claim must be brought "within four years after the transfer was made or the obligation was incurred or, if later, within one year after the transfer or obligation was or could reasonably have been discovered by the claimant." Utah Code Ann. § 25-6-10. The discovery rule generally applies in cases involving Ponzi scheme entities that have been placed in the hands of an equity receiver because the fraudulent nature of the transfers can only be discovered once the Ponzi operator has been removed from the scene. *See, e.g.*, *Quilling v. Cristell*, 2006 WL 316981, at *6 (W.D.N.C. Feb. 9, 2006) ("The fraudulent transfers involved in this lawsuit could not have been discovered because at that time, Gilliland was in control of the Gilliland Entities. Equitable tolling principles recognize that so long as a corporation remains under the control of wrongdoers, it cannot be expected to take action to vindicate the harms and injustices perpetrated by the wrongdoers." (citing *Martin Marietta Corp. v. Gould, Inc.*, 70 F.3d 768, 772 (4th Cir. 1995))).

Kendrick claims that the Receiver is not entitled to the benefit of the discovery rule in this case by virtue of the fact that he stands in the shoes of the VesCor entities, who presumably were on notice of the transfers the moment they occurred. However, as noted above, the Receiver is not identically situated with Southwick, the alleged wrongdoer in this case. Consequently, the Receiver is entitled to the benefit of the discovery rule. The Receiver was

appointed on May 5, 2008 and filed this case on New Year's Eve of the same year; accordingly,

his claims against Kendrick are not barred by the UFTA's statute of limitations.

### III. Conclusion

For the foregoing reasons, Kendrick's Motion to Dismiss the Receiver's fraudulent

transfer claim pursuant to Rule 12(b)(6) is DENIED.

**IT IS SO ORDERED.**


DATED this 14th day of May, 2009.

_____
Judge Dee Benson
United States District Court